1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

MICHAEL RANDALL, et al.,

11

Plaintiffs,

v.

12

13

INTEGRATED
COMMUNICATION SERVICE,
INC., et al.,

14

15

Defendants.

CASE NO. C20-5438JLR

ORDER GRANTING MOTION
FOR CONDITIONAL
CERTIFICATION

16

## I.   INTRODUCTION

17

Before the court is Plaintiffs Michael Randall and Allen Finney's (collectively

18

"Plaintiffs") motion for an order authorizing conditional certification of this putative

19

collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

20

(Mot. (Dkt. # 50).)  Defendants Integrated Communication Services ("ICS") and Comcast

21

Cable Communication Management, LLC, and Comcast Corporation (collectively

22

"Comcast") do not oppose certification but object to Plaintiffs' proposed notice of

1   collective action lawsuit and proposed opt-in form.  (ICS Resp. (Dkt. # 67) at 1-2;

2   Comcast Resp. (Dkt. # 68) at 1.)  The court has considered the parties' submissions, the

3   relevant portions of the record, and the applicable law.  Being fully advised,[1] the court

4   GRANTS the motion for conditional certification and ORDERS the parties to meet and

5   confer to draft mutually acceptable versions of the notice and opt-in form that comply

6   with the directives of this order.

7                                    II.     BACKGROUND

8   **A.     Factual Background**

9           Plaintiffs are technicians employed by ICS, a national fulfillment contractor that

10  provides cable and communication equipment installations across the United States.

11  (Mot. at 3; FAC (Dkt. # 26) ¶ 1.)  Plaintiffs allege that ICS violated the FLSA by, among

12  other things, denying them and similarly situated technicians overtime pay and failing to

13  pay them a minimum wage.  (Mot. at 1; FAC ¶ 2.)  They also allege that Comcast is or

14  was a joint employer of all or some of these technicians during the alleged violations.

15  (*See* Mot. at 2; FAC ¶¶ 41-58.)

16          Pursuant to the FLSA, Plaintiffs seek conditional certification for two groups of

17  technicians:

18          (1) All current and former non-exempt employees of [ICS] working as
            Technicians who do not perform work for [Comcast] throughout the United
19          States during the time period three years prior to the filing of the original
            complaint until resolution of this action ("the Collective"); and
20

21          _____
            [1] No party requests oral argument (Mot. at 1; ICS Resp. at 1; Comcast Resp. at 1), and the
22  court considers it unnecessary for disposition of this motion, *see* Local Rules W.D. Wash. LCR
     7(b)(4).

(2) All current and former non-exempt employees of [ICS] working as Technicians who also perform work for [Comcast] throughout the United States during the time period three years prior to the filing of the original complaint until resolution of this action ("the Comcast Collective").

(Mot. at 1.)

In support of certification, Plaintiffs allege that ICS engages in numerous pay practices that violate the FLSA when compensating technicians. Specifically, they allege that ICS either underreports or refuses to track technicians' hours worked before and after shifts, during meal periods, and for other time worked "off the clock." (FAC ¶ 71; Finney Decl. (Dkt. # 51-1) ¶¶ 8, 26-28; Randall Decl. (Dkt. # 51-2) ¶¶ 8, 28-31; Golliet Decl. (Dkt. # 51-3) ¶¶ 8, 29-31.)[2] They also allege that ICS routinely instructs technicians to reduce their hours, encourages them to report fewer hours than were actually worked, and changes their time records. (FAC ¶ 71; Finney Decl. ¶¶ 26-28; Randall Decl. ¶¶ 18, 28-31; Golliet Decl. ¶ 8.) According to Plaintiffs, the pressure to work extended hours forces technicians to frequently eat while driving to the next job while still reporting 30-minute meal breaks even when the technician takes no break. (FAC ¶ 72; Finney Decl. ¶¶ 19-20; Randall Decl. ¶¶ 21-22; Golliet Decl. ¶¶ 20-21.) Plaintiffs also allege that ICS requires technicians to submit time entries stating that they stopped working at least one hour before they actually stop working on a given day. (Finney Decl. ¶¶ 17, 26; Randall Decl. ¶¶ 18, 28; Golliet Decl. ¶¶ 18, 28.) In addition to

---

[2] In addition to that of Jacob Golliet, Plaintiffs submit declarations from several other opt-in Plaintiffs. (*See* Judd Decl. (Dkt. # 51-4); McDonald Decl. (Dkt. # 51-5); Williams Decl. (Dkt. # 51-6); Ryan Decl. (Dkt. # 51-7).) Because the allegations in these declarations are largely the same for each Plaintiff, the court cites only a representative sample when describing the allegations.

ORDER - 3

1    hours violations, Plaintiffs allege that their compensation is not received "free and

2    clear"—that is, ICS does not provide them with the tools and supplies necessary to

3    complete their jobs, nor does it compensate technicians when they purchase these tools.

4    (FAC ¶ 10; Finney Decl. ¶¶ 21-22; Randall Decl. ¶¶ 23-24; Golliet Decl. ¶¶ 23-24.)

5         Plaintiffs also allege that ICS's process of using job codes to compensate for

6    discrete tasks accomplished by technicians violates the FLSA.  (Mot. at 6; FAC

7    ¶¶ 74-75.)  ICS uses the piece-rate compensation from these individual tasks to calculate

8    technicians overtime pay.  (Finney Decl. ¶ 24; Randall Decl. ¶ 26; Golliet Decl. ¶ 26.)

9    But Plaintiffs allege that ICS has a policy and practice of deleting and altering job codes

10   as well as pressuring technicians to omit code entries in order to reduce compensation.

11   (FAC ¶ 70; Finney Decl. ¶¶ 23-25; Randall Decl. ¶¶ 27, 31; Golliet Decl. ¶¶ 27, 31.)

12        Finally, Plaintiffs allege that Comcast is a joint employer of the technicians and

13   uses ICS to shield itself from liability.  (FAC ¶¶ 41-58.)  Specifically, they contend that

14   Comcast maintains operational control over the day-to-day functions of technicians to the

15   extent that it:  (1) monitors and evaluates technicians' activities in progress in real time

16   throughout the work day; (2) requires technicians to use a specific program that tracks

17   their hours and dictates their daily schedules; (3) controls and monitors technicians' job

18   details including route schedules, routes travelled, regions covered, and availability; (4)

19   requires technicians to be in constant and direct communication with Comcast; (5)

20   requires technicians to have meal breaks approved by Comcast dispatchers; (6) exercises

21   direct and indirect power to hire, fire, and discipline technicians; (7) determines

22   technicians' rate and method of payment; (8) requires technicians to undergo background

checks and periodic drug screenings; and (9) requires technicians to wear uniforms with a Comcast logo and display Comcast-issued identification badges.  (Mot. at 7-8; FAC ¶¶ 44-53; Finney Decl. ¶ 4; Randal Decl. ¶ 4; Golliet Decl. ¶ 4.)

**B.      Procedural Background**

Plaintiffs filed their complaint on May 8, 2020.  (Compl. (Dkt. # 1).)  On September 24, 2020, Plaintiffs filed the instant motion for conditional certification.  (*See* Mot.)  On November 24, 2020, the parties submitted a joint motion to stay proceedings pending mediation, which the court granted.  (1st Joint Mot. (Dkt. # 59); 12/1/20 Order (Dkt. # 60).)  On April 8, 2021, the parties submitted a joint motion to lift the stay on all proceedings, which the court also granted.  (2d Joint Motion (Dkt. # 64); 4/9/21 Order (Dkt. # 66).)  ICS and Comcast then filed their respective responses to Plaintiffs' motion for conditional certification on April 30, 2021.  (ICS Resp.; Comcast Resp.)  Neither Defendant opposes conditional certification of the proposed collectives, but both object to Plaintiffs' proposed notice of collective action.  (*See* ICS Resp. at 1-2; Comcast Resp. at 1.)  Plaintiffs filed their reply on May 17, 2021.  (Reply (Dkt. # 69).)

**III.    ANALYSIS**

The court first lays out the appropriate legal standard for conditionally certifying a FLSA collective before determining if that certification is appropriate here.  It then addresses the parties' arguments regarding the text of the proposed notice and the mechanics of issuing notice to the proposed collectives.

1    **A.    Legal Standard**

2          Under the FLSA, a plaintiff may bring a collective action on behalf of himself and

3    "similarly situated" employees.  29 U.S.C. § 216(b).  The Ninth Circuit has held that

4    plaintiffs may litigate jointly under the statute if they "(1) claim a violation of the FLSA,

5    (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing."

6    *Campbell v. City of L.A.*, 903 F.3d 1090, 1100 (9th Cir. 2018).  While the statute does not

7    describe a process for evaluating collective proceedings, courts generally choose "to

8    evaluate the propriety of the collective mechanism—in particular, plaintiff's satisfaction

9    of the 'similarly situated' requirement—by way of a two-step 'certification' process."  *Id.*

10   (citing 1 McLaughlin on Class Actions § 2:16 (14th ed. 2017)); *see also Khadera v. ABM*

11   *Indus., Inc.*, 701 F. Supp. 2d 1190, 1193-94 (W.D. Wash. 2010) (noting trend and

12   applying two-step process).

13         The first stage is preliminary certification, where notice is issued to the proposed

14   collective members "conditioned on a preliminary determination that the collective . . .

15   satisfies the 'similarly situated' requirement of section 216(b)."  *Campbell*, 903 F.3d at

16   1109 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  Assuming

17   the collective action survives the first stage, the second stage comes "at or after the close

18   of relevant discovery" when "[t]he employer can move for decertification of the

19   collective action for failure to satisfy the similarly situated requirement in light of the

20   evidence produced to that point."  *Id.* at 1110.

21         The court's review for preliminary certification is "sometimes described as

22   requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis' but in

1   any event is loosely akin to the plausibility standard, commensurate with the stage of the

2   proceedings." *Id*. at 1109 (collecting cases).  Review at this stage is "typically focused

3   on a review of the pleadings," though it may also "be supplemented by declarations or

4   limited other evidence." *Id*.  Under this lenient standard, prospective plaintiffs need not

5   be identical to satisfy the similarly situated requirement.  *See Villarreal v. Caremark*

6   *LLC*, 66 F. Supp. 3d 1184, 1189 (D. Ariz. 2014) ("[P]laintiffs need only show that their

7   positions are similar, not identical, to the positions held by the putative class members."

8   (internal citations omitted)).  All that is required is some "modest factual showing" that

9   the plaintiff is similarly situated to the potential class.  *Misra v. Decision One Mortg. Co.,*

10  *LLC*, 673 F. Supp. 2d 987, 993 (C.D. Cal. 2008) (citing *Roebuck v. Hudson Valley*

11  *Farms, Inc*., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)).  A court can find potential

12  plaintiffs to be "similarly situated" based on a variety of factors, "including the specific

13  duties and conditions of employment of the individual plaintiffs, and the various defenses

14  available to the defendant with respect to the individual plaintiffs." *See Wilson v. Maxim*

15  *Healthcare Servs., Inc*., No. C14-789RSL, 2014 WL 7340480, at *3 (W.D. Wash. Dec.

16  22, 2014) (citing *Troy v. Kehe Food Distribs., Inc*., 276 F.R.D. 642, 649 (W.D. Wash.

17  2011)).

18  **B.    Conditional Certification**

19      Plaintiffs have demonstrated that the proposed collectives are sufficiently similarly

20  situated to support conditional certification.  The complaint and the declarations

21  submitted by Plaintiffs describe two collectives of individuals similarly situated to the

22  Plaintiffs with allegations of FLSA violations—technicians employed by ICS and

1  technicians allegedly jointly employed by ICS and Comcast. *See supra* § II.A; (*see also*

2  FAC; Finney Decl.; Randall Decl.; Golliet Decl.; Judd Decl.; McDonald Decl.; Williams

3  Decl.; Ryan Decl.)  Neither Defendant objects to the conditional certification of the

4  proposed collectives or presents any arguments that the individuals in the proposed

5  collectives are not similarly situated.[3]  (*See* ICS Resp. at 1-2; Comcast Resp. at 1.)

6  Accordingly, the court grants Plaintiffs' motion for conditional certification.

7  **C.    Issuance of Notice**

8          Having determined that conditional certification is appropriate, the court must

9  examine Plaintiffs' proposed authorized notice of a collective action and ensure it is

10  "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172.  Plaintiffs

11  propose that notice occurs via mail, email, text message, and posted workplace notices at

12  ICS offices.  (Mot. at 18.)  To this end,  Plaintiffs present three documents:  a proposed

13  notice of collective action lawsuit (Pls. Prop. Not. (Dkt. # 51-13)); a proposed opt-in

14  consent form (Pls. Proposed Opt-in Form (Dkt. # 51-14)); and a proposed script for

15  notice via text messages (Prop. Text Message (Dkt. # 51-15)).  They also request that the

16  court require ICS to produce to Plaintiffs' counsel "a computer-readable database that

17  includes the names of all proposed Collective members, along with their last known

18  mailing addresses, all email addresses, all telephone numbers, social security numbers

19  and dates of employment." (Mot. at 17.)  They request a 90-day notice period and that a

20

21          [3] Comcast alludes to an argument that it is not a joint employer of the technicians.  (*See*
    Comcast Resp. at 1-2 (collecting cases).)  However, because it does not set forth specific
    arguments on this issue such that it would impact conditional certification, the court does not
22  address this argument at this time.  (*See id*.)

1    reminder notice be sent to those who have not opted in after 50 days.  (*Id.* at 18.)  Finally,

2    they request that putative class members be able to submit their opt-in forms with

3    electronic signatures.  (*Id.*)

4        Defendants raise several objections to Plaintiffs' proposed notice.  First, they

5    argue it provides insufficient information to putative class members.  (ICS Resp. at 2-3,

6    4-5; Comcast Resp. at 2-3, 5.)  Second, they object to the length of the 90-day response

7    period and the proposed reminder notice.  (ICS Resp. at 3-4; Comcast Resp. at 5.)  Third,

8    they object to sending text messages to putative class members and posting notices in ICS

9    workplaces.  (ICS Resp. at 5-6; Comcast Resp. at 3-5.)  Finally, Comcast objects to

10   providing Plaintiffs' counsel with the contact information of putative collective members

11   and to the use of electronic signatures.  (Comcast Resp. at 6.)  To support their

12   objections, Defendants submit apparently identical counter-proposals for the notice and

13   opt-in forms.  (*Compare* ICS Resp. at 7-11, *with* Comcast Resp. Ex. 1 ("Defs. Prop.

14   Notice"); *compare* ICS Resp. at 12, *with* Comcast Resp. Ex. 2 ("Defs. Prop. Opt-in

15   Form").)  The court addresses each of the Defendants' objections in turn.

16       1.  Potential Obligations of Plaintiffs and Defense Counsel Contact Information

17       Plaintiffs' proposed notice states that, should individuals opt in, they "may be

18   required, with the assistance of the Plaintiffs' lawyers, to respond to written questions, sit

19   for depositions, and/or testify in court."  (Pls. Prop. Not. at 4.)  ICS and Comcast argue

20   that the notice should include more detail about potential obligations of putative class

21   members should they opt in to the litigation, specifically potential involvement in

22   discovery and liability for Defendants' attorneys' fees.  (ICS Resp. at 2-3; Comcast Resp.

1   at 2-3.)  They argue that the notice should include a description of putative class

2   members' potential obligations to provide documents, travel to the Western District of

3   Washington to be deposed or testify at trial, and pay attorneys' fees and costs if they do

4   not prevail.  (ICS Resp. at 2-3; Comcast Resp. at 2-3; *see also* Defs. Prop. Not. at 3

5   (proposing edits to this effect).)

6          The court is mindful that certain statements may have an undue chilling effect on

7   individuals considering opting in to the proposed collective.  *See, e.g.*, *Abdul-Rasheed v.*

8   *KableLink Commc'ns, LLC*, No. 8:13-CV-879-T-24 MAP, 2013 WL 6182321, at *6

9   (M.D. Fla. Nov. 25, 2013) (concluding that warning regarding potential liability for costs

10  "would undermine the FLSA's goal of encouraging full enforcement of statutory rights

11  because the warning might dissuade people from joining the lawsuit") (citing *Carrillo v.*

12  *Schneider Logistics, Inc.,* Case No., 2012 WL 556309, at *14 (C.D. Cal. Jan.31, 2012);

13  *Austin v. CUNA Mutual Ins. Soc'y,* 232 F.R.D. 601, 608 (W.D. Wis. 2006)).  This is

14  especially true when the statements involve potential obligations stemming from

15  individualized discovery, which is uncommon in FLSA collective action suits.  *See*

16  *Kuzich v. HomeStreet Bank*, No. CV-17-02902-PHX-GMS, 2018 WL 3872191, at *4 (D.

17  Ariz. Aug. 15, 2018) ("[I]ndividualized discovery is rarely appropriate in FLSA

18  collective actions, would have a chilling effect, and those who opt in will have

19  opportunities to withdraw if unwilling to participate in discovery.")  Accordingly, the

20  court concludes that Plaintiffs' proposed language regarding discovery obligations are

21  sufficient, and Defendants' proposed statements regarding providing documents and

22  traveling to the Western District of Washington are not warranted.

1    Defendants' proposed language regarding a potential obligation to pay

2 Defendants' attorneys' fees and costs is also unnecessary.  The case law on this question

3 is split.  Some courts have included language regarding the possibility of putative class

4 members' paying attorneys' fees and costs after concluding that potential plaintiffs

5 should be made aware of this possible outcome.  *See Stanfield v. First NLC Fin. Servs.,*

6 *LLC*, No. C06-3892 SBA, 2006 WL 3190527, at *5 (N.D. Cal. Nov. 1, 2006); *Schiller v.*

7 *Rite of Passage, Inc.*, No. 2:13-CV-0576-HRH, 2014 WL 644565, at *6 (D. Ariz. Feb.

8 19, 2014); *Sealy v. Keiser Sch., Inc.*, No. 11-61426-CIV, 2011 WL 7641238, at *4 (S.D.

9 Fla. Nov. 8, 2011).[4]  Other courts have not allowed warnings regarding attorneys' fees

10 and costs due to the chilling nature of the warnings coupled with the remote chance that

11 putative class members would be liable for attorneys' fees and costs in a FLSA action.

12 *See Abdul-Rasheed*, 2013 WL 6182321, at *6; *Bath v. Red Vision Sys., Inc.*, No. 2:13-

13 02366 SDW MCA, 2014 WL 2436100, at *7 (D.N.J. May 29, 2014); *Dilonez v. Fox*

14 *Linen Serv. Inc.*, 35 F. Supp. 3d 247, 256 (E.D.N.Y. 2014); *Carrillo*, 2012 WL 556309, at

15 *14; *Austin*, 232 F.R.D. at 608; *Bell v. Mynt Ent., LLC*, 223 F.R.D. 680, 683 (S.D. Fla.

16 2004).  The court is persuaded by the latter group of cases.  The potential chilling effect

17 of such a warning is especially concerning given the FLSA's goal of fully enforcing

18 statutory rights where opt-in plaintiffs are often low-wage workers.  *See Carrillo*, 2012

19

20

21    [4] ICS also cites *Bollinger v. Residential Cap., LLC*, 761 F. Supp. 2d 1114 (W.D. Wash.
2011) in support of its argument on this point (ICS Resp. at 2), but this case does not discuss

22 attorneys' fees or costs, *see id.* at 1121.

1   WL 556309, at *14.  Accordingly, the court will not require the addition of language

2   regarding putative class members' potential liability for attorneys' fees and costs.

3       Defendants also argue that the notice should include the contact information of

4   Defendants' counsel in this suit.  (ICS Resp. at 4-5; Comcast Resp. at 5.)  They contend

5   that "plaintiffs have provided no rationale why contact information for ICS and

6   Comcast's counsel should be omitted."  (ICS Resp. at 5.)  However, this court agrees

7   with a previous ruling from this district and "find[s] 'no basis in law or logic' for that

8   additional contact information."  *Morden v. T-Mobile USA, Inc.*, No. C05-2112RSM,

9   2006 WL 2620320, at *4 (W.D. Wash. Sept. 12, 2006) (quoting *Gambo v. Lucent Techs.,*

10  *Inc.,* Case No., 2005 WL 3542485, at *7 (N.D. Ill. Dec. 22, 2005)); *see also Johnson v.*

11  *Serenity Transp., Inc.*, No. 15-CV-02004-JSC, 2016 WL 1569984, at *3 (N.D. Cal. Apr.

12  19, 2016) (citing examples of courts not allowing defense counsel's contact information

13  in notice).  The court denies Defendants' request to include this information.

14      2.  Response Period and Reminder

15      Defendants also object that the proposed response of 90 days is unreasonably long

16  and a reminder notice after 50 days is unnecessary.  (ICS Resp. at 3-4; Comcast Resp. at

17  5.)  Plaintiffs respond that both the 90-day period and the reminder notice are reasonable

18  because (1) Defendants argue they no longer employ any technicians and (2) low-income

19  workers like the technicians are disproportionately likely to have been affected by

20  housing-related issues due to the COVID-19 pandemic—both of which may result in

21  additional time needed to reach putative collective members.  (Reply at 4.)

22

1    "[D]istrict courts in the Ninth Circuit routinely approve 60- to 90-day opt-in

2    periods." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL

3    6431869, at *5 (C.D. Cal. Sept. 28, 2018) (collecting cases).  They similarly often allow

4    reminder notices to be sent in FLSA actions because they require an opt-in procedure.

5    *See id.*; *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *6

6    (N.D. Cal. July 18, 2012); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D.

7    Cal. 2010).  The court concludes that a 90-day opt-in period is appropriate and a reminder

8    notice, identical to the first, may be sent to individuals who have not opted in to the

9    collective after 50 days have passed.

10        3.  Forms of Notice

11        In addition to mail and email, Plaintiffs propose sending text message notices to

12    putative collective members.  (*See* Prop. Text Message.)  Defendants argue that text

13    messages are unnecessary and overly intrusive given that putative collective members

14    will also receive mail and email notice.  (ICS Resp. at 5 (citing *Slaughter v. Caidan*

15    *Mgmt. Co.*, 317 F. Supp. 3d 981, 994 (N.D. Ill. 2018); *Bakhtiar v. Info. Res., Inc.*, Case

16    No., 2018 U.S. Dist. LEXIS 125439, at *9 (N.D. Cal. July 26, 2018)); Comcast Resp. at 4

17    (citing *Chetwood v. T-Mobile USA, Inc.*, No. C19-0458RSL, 2020 WL 1689730, at *4

18    (W.D. Wash. Apr. 7, 2020); *Wilson v. Maxim Healthcare Servs., Inc.*, No. C14-0789RSL,

19    2014 WL 7340480, at *9 (W.D. Wash. Dec. 22, 2014)).)  The court agrees with

20    Defendants.  Plaintiffs have not demonstrated why mail and email notices should be

21    insufficient to reach putative collective members.  Thus, the court will not allow text

22    message notices.

1    ICS also contends that posting workplace notices is unnecessary as a form of

2    notice because "ICS no longer employs any putative class members." (ICS Resp. at 5-6.)

3    Plaintiffs respond that if ICS can verify its representation regarding employment of

4    putative class members, then workplace postings would be unnecessary. (Reply at 3.)

5    Accordingly, the court orders the parties to meet and confer on this issue with 20 days of

6    the filing of this order and submit a resolution of this issue to the court.

7        4.  Contact Information of Potential Collective Members

8    Plaintiffs request that the court order ICS to produce to Plaintiffs' counsel "a

9    computer-readable database that includes the names of all proposed Collective members,

10   along with their last know mailing addresses, all email address, all telephone numbers,

11   social security numbers and dates of employment." (Mot. at 17.) They represent that the

12   third-party notice administrator will use this information to mail, email, and text message

13   the court-approved notice to the proposed class members. (*Id.* at 18.)

14   ICS states that Plaintiffs have already received contact information regarding

15   putative class members but does not appear to otherwise object to providing this

16   information. (ICS Resp. at 3 n.2.) Comcast, which would not be required to produce any

17   contact information, objects that this would violate putative class members' privacy.

18   (Comcast Resp. at 6 (citing *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1127

19   (N.D. Cal. 2009); *Russell v. Wells Fargo & Co.*, No. 07-cv-3993 CW, 2008 WL

20   4104212, at *5 (N.D. Cal. Sep. 3, 2008)).) Plaintiffs respond by observing that in the two

21   cases cited by Comcast, plaintiffs' counsel had proposed that they would contact

22   individuals directly, which concerned the courts. (Reply at 6 (citing *Lewis*, 669 F. Supp.

1    2d at 1127; *Russell*, 2008 WL 4104212, at *5).)  They argue this is not the case here,

2    where they propose using a third-party administrator and wish to have the information to

3    facilitate the notice process.  (*Id.* at 6 n.13 (collecting cases where contact information

4    was provided to plaintiffs' counsel).)  They also observe that any privacy concerns are

5    mitigated by the potential for a protective order and ethics rules.  (*Id.* at 6.)  The court

6    agrees with Plaintiffs.  The court orders that the parties meet and confer within 20 days of

7    the filing of this order to determine whether the information provided for mediation is

8    sufficient and, if they cannot reach an agreement regarding the previously produced

9    contact information, that ICS produce a computer-readable database of the contact

10   information of putative class members.

11         However, Plaintiffs have made no attempt to explain why they would need access

12   to individuals' social security numbers, nor do the cases they cite support providing this

13   information.  (*See id.* at 6 n.13 (collecting cases where contact information was provided

14   but no cases where social security numbers were collected)); *Gilbert v. Citigroup, Inc.*,

15   Case No. 08-0385 SC, 2009 WL 424320, at *6 (N.D. Cal. Feb. 18, 2009) (not allowing

16   production of social security numbers but contemplating future motion to compel if other

17   contact information is insufficient).  Furthermore, the court has determined that text

18   message notice is not appropriate, *see supra* § III.C.3, and Plaintiffs have not requested

19   notice by telephone (*see generally* Mot.)  Therefore, ICS shall not provide the social

20   security numbers or telephone numbers of putative class members to Plaintiffs' counsel.

21

22

1          5.  Electronic Signatures

2          Comcast also objects to the use of electronic signatures to sign the opt-in forms.

3   (Comcast Resp. at 5-6.)  It contends that because potential opt-ins are party plaintiffs,

4   "their obligations will require far more effort than merely clicking a few links and typing

5   out an electronic signature." (*Id*. at 6.)  Nonsense.  FLSA allows workers to "litigate

6   jointly if they (1) claim a violation of the FLSA, (2) are "similarly situated," and (3)

7   affirmatively opt in to the joint litigation, in writing." *Campbell*, 903 F.3d at 1100 (citing

8   29 U.S.C. § 216(b)).  Nothing in the statute requires that plaintiffs "sign[] a consent form

9   by hand and placing it into a self-addressed, stamped envelope," as Comcast suggests.

10  *See* 29 U.S.C. § 216(b); (Comcast Resp. at 6.)  In the modern world, many important

11  documents are signed electronically.  Indeed, recent public health measures to reduce the

12  spread of COVID-19 have resulted in many individuals and institutions, including this

13  court, using electronic signatures when they would previously have signed documents on

14  paper.  Comcast's arguments on this point are meritless, and putative collective members

15  may submit their opt-in form with electronic signatures.

16          6.  Reference to the Court

17          Plaintiffs' proposed notice states that "the court has conditionally determined that

18  you are 'similarly situated' to the named Plaintiffs . . . ." (Pls. Prop. Not. at 1.)

19  Defendants propose replacing this language with a sentence that does not reference the

20  court. (Def. Prop. Not. at 1.)  While the parties do not provide arguments regarding this

21  proposed change (*see generally* ICS Resp.; Comcast Resp.; Reply), the court agrees with

22  Defendants on this point.  Referencing the court in this manner could be interpreted as the

court encouraging participation in this lawsuit, which is not proper. *See, e.g.*, *Prentice v. Fund for Pub. Int. Rsch., Inc.*, Case No. C-06-7776 SC, 2007 WL 2729187, at *5 (N.D. Cal. Sept. 18, 2007) (disallowing notice material that "may give the false impression of judicial endorsement of Plaintiffs' position where none exists.")

       7.   <u>Miscellaneous Changes to Proposed Notice</u>

       Defendants suggest many other changes to the proposed notice that the parties have not addressed in their arguments. (*Compare* Pls. Prop. Not., *with* Defs. Prop. Not.; *compare* Pls. Prop. Opt-in Form, *with* Defs. Prop. Opt-in Form; *see* ICS Resp.; Comcast Resp.; Reply.) The parties are ordered to meet and confer with 20 days of the filing of this order to resolve these proposed changes. They shall draft mutually acceptable versions of the notice and opt-in form and provide copies to the court. *See Bollinger*, 761 F. Supp. 2d at 1121.

## IV.    CONCLUSION

      For the foregoing reasons the court GRANTS in part and DENIES in part Plaintiffs' motion (Dkt. # 50). The court ORDERS as follows:

    1.  The court conditionally certifies the two FLSA collectives in Plaintiffs' motion. (Mot. at 1.)

    2.  The parties shall meet and confer within 20 days of the filing of this order to draft mutually acceptable versions of the notice and opt-in form that comply with the directives in this order. The proposed forms should be submitted to the court with 30 days of the filing of this order.

3. The parties shall meet and confer within 20 days of the filing of this order regarding the contact information of proposed collective members.  If they cannot reach an agreement, ICS shall produce the requested contact information, excluding telephone numbers and social security numbers, in a computer-readable database.

4. The parties shall meet and confer within 20 days of the filing of this order regarding the placement of workplace postings of notices and reach a mutually agreed upon conclusion on this issue.

5. The notice period shall be 90 days.

6. The court authorizes the third-party notice administrator to send reminder notices by mail and email to proposed collective members who have not opted-in after 50 days.

7. The court authorizes members of the putative collective to submit their opt-in forms with electronic signatures.


Dated this 8th day of June, 2021.


JAMES L. ROBART
United States District Judge