THE HONORABLE DAVID G. ESTUDILLO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL RANDALL and ALLEN FINNEY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>INTEGRATED COMMUNICATION SERVICE, INC.; COMCAST CORPORATION, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,<br><br>Defendants. | CASE NO. 3:20-cv-05438-DGE<br><br>ORDER ON MOTION TO APPROVE PRELIMINARY CLASS SETTLEMENT (DKT. NO. 114) |

## I.    INTRODUCTION

This matter comes before the Court on the parties' motion for preliminary approval of class and collective action settlement.  (Dkt. No. 114.)

## II.    BACKGROUND

### A.  Litigation and Settlement Negotiations

On behalf of themselves and others similarly situated, Plaintiffs' amended complaint asserts Defendants violated federal, state, and local wage laws.  (Dkt. No. 26.)  Plaintiffs allege Defendants employed them and the proposed class members as technicians in Oregon, Colorado, and Washington.  (*Id*. at 2.)  Technicians are those individuals "who carried out Defendants'

installation and service business." (*Id*.)  Plaintiffs claimed Integrated Cable Communications ("ICS") failed to compensate technicians for off-the-clock work, changed job codes to lower paying codes, manipulated time records so technicians' hours were significantly underreported, and failed to provide employees with proper meal and rest breaks.  (*Id*. at 2–3.)

The Court previously authorized conditional class certification of the putative collective action pursuant to the Fair Labor Standards Act, 28 U.S.C. § 216(b).  (Dkt. No. 75.)  The parties conducted extensive discovery.  (Dkt. No. 115 at 7–8.)  This included formal discovery, with 20 special interrogatories and 52 requests for production of documents, as well as informal discovery.  (*Id*. at 7.)  Plaintiff also deposed the ICS Director of Operations and conducted over 100 in-depth interviews with proposed class members.  (*Id*. at 8.)

The parties engaged in multiple rounds of mediation.  (*Id*. at 8–9.)  The first mediation, on March 9, 2021, was unsuccessful.  (*Id*. at 8.)  The second mediation occurred on June 22, 2022 under a second mediator.  (*Id*.)  The second mediator, Judge Diane Welsh, issued a mediator's proposal to which the parties agreed.  (*Id*.)  On September 22, 2022, the parties executed a memorandum of understanding with the essential terms of settlement.  (*Id*.)  The parties finalized and executed the Proposed Settlement Agreement on February 17, 2023.  (*Id*. at 9.)

### B.  Proposed Settlement Agreement Terms

The gross settlement amount is $2,200,000.  (Dkt. No. 115-1 at 29.)  Of this, the following amounts are to be deducted: (1) $15,000 to each of the two named plaintiffs; (2) up to one third of the gross settlement amount to class counsel, approximately $733,333.33; (3) up to $30,000 for class counsel costs; and (4) approximately $16,250 for settlement administration

costs.  (*Id*.)  Once these costs are deducted, the estimated net settlement amount is approximately $1,390,000.  (Dkt. No. 115 at 9.)

There are 752 individuals in the proposed settlement class.  (Dkt. No. 115 at 9.)  The State Class Members have 735 technicians who were employed by ICS in Colorado, Oregon, and Washington.  (*Id*.)  The Collective Members include those technicians employed by ICS as hourly non-exempt employees between May 8, 2017 and August 26, 2021, and whose opt-in consent from has been filed in this action.  (Dkt. No.115 at 2.)  The Collective has 195 individuals, many of whom overlap with the State Class members.  (Dkt. No. 115 at 9.)

The Net Settlement Amount will be allocated to participating individuals without them needing to submit a claim form; participating individuals include those State Class members who do not opt out and those Collective members who deposit their settlement checks.  (Dkt. No. 115-1 at 29.)  Each participating individual's settlement share will be determined as a pro rata share of the Net Settlement Amount based on the total number of workweeks each individual worked at specified times between May 8, 2014 and August 26, 201.  (*See id*. at 18.)  The Proposed Settlement Agreement weights the pro rata shares for the three States differently to reflect state law claims and differing average rates of pay by state.  (*Id*.)  Any funds from checks that are returned as undeliverable or are not negotiated will revert to the parties' agreed-upon *cy pres* beneficiary, the National Employment Law Project.  (Dkt. No. 115-1 at 20.)

### III.   DISCUSSION

#### A.  Legal Standard

Upon a motion for proposed class settlement, courts must "certify the class for purposes of judgment on the proposal" and "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ. P. 23(e)(1)(b)(i-ii).

Courts must find the class would have been certified under Federal Rule of Civil Procedure 23(a).  When deciding whether a class should be certified, courts look at four factors: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ. P. 23(a)(1)-(4).  Courts also must find that the terms of the settlement are fair, adequate, and reasonable.  To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (quoting *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *see also Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir.1982) (noting that the list of factors is "by no means an exhaustive list of relevant considerations, nor have we attempted to identify the most significant factors").

However, at the preliminary approval stage, a full analysis of the settlement terms is not required or even possible given the lack of a fully developed record before the Court.  *Uschold v. NSMG Shared Services*, *LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019).  At this stage, preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

**B.  Preliminary Class Certification**

1.  Numerosity

A court may certify a class only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  While "[n]o exact numerical cut-off is required[,] . . . numerosity is presumed where the plaintiff class contains forty or more members."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Here, the parties indicate there are over 700 proposed class members.  (Dkt. No. 115 at 9.)  The numerosity requirement is met.

2.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Rule 23(a)(2) has been construed permissively.  *Staton*, 327 F.3d at 953.   That is, "[a]ll questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Id.*  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), overruled on other grounds by *Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

Here, there are common questions as to whether ICS had a policy of not paying technicians properly for hours worked, mealtimes, and rest times.   The core questions at issue in this case relate not to individualized treatment, but about which ICS policies applied to all class members.

3.  Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "The commonality and typicality requirements of Rule 23(a) tend to merge."  *General Telephone Co.* v. *Falcon*, 457 U.S. 147, 157, n.13 (1982).

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Here, the named plaintiffs' claims—that they were not paid for overtime, mealtimes, and rest breaks—are almost identical to the claims put forward by the absent class members.  While the exact number of hours may differ, the named plaintiffs' claims are typical of the unnamed class members.

4.   Adequacy of Representation

Courts must consider whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether the class counsel meets this standard, "we ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton,* 327 F.3d at 957 (quoting *Hanlon,* 150 F.3d at 1020; *see also Molski,* 318 F.3d at 955 (quoting *Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir.1995), and stating a similar standard).

Here, the named plaintiffs have secured counsel with experience litigating class actions who appear to have vigorously pursued the claims.  The named plaintiffs are fellow technicians so their claims are in no way in conflict with the class members.  Based on the evidence before the Court, there appears to be no conflict of interest between the named plaintiffs, their attorneys, and the class members.  Thus, the named plaintiff's representation of the class is appropriate.

Accordingly, the Court finds that the proposed class meets the Rule 23(a) requirements.

**C.  Preliminary Settlement Approval**

Next, the Court assesses whether the proposed settlement is appropriate for class notice. "Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final hearing." *Hunichen v. Atonomi LLC*, Case No. C19-0615-RAJ-SKV, 2021 WL 5854964 at * 4 (W.D. Wash. Nov. 12, 2021).

1. Settlement process

A proposed class settlement is presumptively fair when reached after meaningful discovery, arm's length negotiation, and conducted by capable, experienced counsel. *Id.* at 5. The involvement of an experienced mediator also supports a finding of fairness. *Id.*

Instances tending to show that negotiations were not at arm's length can include: (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *In re Bluetooth. Headset Products Liability Litigation*, 654 F.3d 935, 947 (9th Cir. 2011).

It appears the parties engaged in relatively rigorous discovery, including interviewing over 100 class members (roughly 13% of the total class). The parties have been in settlement talks for years that included the use of multiple mediators. The attorney fees, capped at 1/3 of the gross settlement amount, are directly proportionate to class funds rather than separate and

apart from them.  Any settlement funds not paid to class members do not revert to counsel or Defendants but instead go to a *cy press* non-profit organization devoted to worker's rights.

Based on the record provided, at this stage, the Court finds the parties have sufficiently engaged in arm's length, non-collusive negotiations.

2.  Obvious deficiencies

The Court could find no obvious deficiencies in the preliminary settlement.  Notice to class members who may then provide objections will be a necessary component of final approval.

3.  Preferential treatment of class representatives

District courts must be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect negotiations." *Id.*  For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).  Notwithstanding, "named plaintiffs ... are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977, which in this case Plaintiffs label as "service awards."  The Court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Id*. at 975.  To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id*.

Here, proposed class members stand to recover $1,849 on average and the two named plaintiffs would each recover $15,000.  (Dkt. No. 114 at 18.)  Plaintiffs note that the "proposed service awards are intended to compensate Plaintiffs for the broader release they have agreed to

and for the critical role they played in this case, and the time, effort, and risks undertaken in helping secure the result obtained on behalf of the Settlement Class Members."  (Dkt. No. 114 at 125–126.)  These service awards do not appear unreasonable under the circumstances presented. *See In re Online DVD-Rental Antitrust Litig*. 779 F.3d 934 (9th Cir. 2015) (approving incentive payments when applying the *Staton* framework).  There are only two named plaintiffs who, based on the record presented, appear to have invested significant time and effort in advancing the claims and moving this litigation forward.  The named plaintiffs' combined portion of the total net settlement amount is 2.16%.  Their proposed award are roughly 13 times as much as the proposed class members.  Considering the amounts involved and the degree to which the Plaintiffs participated in advancing the claims and in pursuing this litigation, the Court finds the Proposed Settlement Agreement does not improperly grant preferential treatment to the class representatives.

    4.   Range of possible approval

        In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and "consider [P]laintiffs' expected recovery balanced against the value of the settlement offer."  *See Tableware*, 484 F. Supp. 2d at 1080.  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

        Plaintiffs modeled Defendants' total potential exposure for unpaid meal breaks, rest periods, and off-the-clock work.  (Dkt. No. 114 at 17–18.)  If Plaintiffs prevailed on all claims including penalty and liquid damages claims, the total potential exposure would be

approximately $7,432,952.  (Dkt. No. 115 at 11.)  This model assumed every employee worked one hour per day off the clock, missed 100% of meal breaks, and missed 100% of rest breaks. (*Id.*)  Of the $7 million figure, $3,309,565 is calculated as being the substantive exposure for off-the-clock claims and for meal and rest break violations.  (*Id.*)  The $2,200,000 negotiated non-reversionary gross settlement amount for off-the-clock claims and for meal and rest break violations represents approximately 65% of Defendants' substantive exposure, and 30% of Defendants' total estimated potential exposure of the $7 million figure.  (*Id.* at 18.)  Considering these figures represent a best-case-scenario, and that settlement negotiations necessarily invite compromise, the Court finds the settlement amount falls within the range of possible approval.

Thus, the Court finds the Proposed Settlement Agreement appropriate for preliminary approval.

### D. Attorney Fees

The parties indicate in the proposed settlement agreement that class counsel will receive one-third of the gross settlement amount, or roughly $733,333.333.  (Dkt. No. 114 at 26.) Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method.  *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir.2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.2000)).  The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer. *Staton*, 327 F.3d at 965.  Because the benefit to the class is easily quantified in common-fund settlements, the Ninth Circuit has allowed courts to award attorneys a percentage of the common

fund in lieu of the often more time-consuming task of calculating the lodestar.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir. 2011).

Applying this calculation method, courts typically calculate 25% of the fund as the "benchmark" for a reasonable fee award, providing adequate explanation in the record of any "special circumstances" justifying a departure.  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *accord Powers,* 229 F.3d at 1256–57); *accord Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989).

Here, the parties propose using the percentage-of-recovery method, indicating class counsel would receive one-third of the gross settlement amount.  The Motion does not fully discuss the basis for the one-third award.  (Dkt. No. 114 at 26-27.)  The parties are directed to file a motion for attorney fees at the time of filing a motion for final settlement approval; the parties should include an explanation of the special circumstances justifying a departure from the benchmark 25% award.  At present, the Court will reserve judgment and possible adjustment from 25%.

## IV.    CONCLUSION

Accordingly, the Court hereby GRANTS the parties' motion for approval of preliminary settlement.  Separately, the Court will enter Plaintiff's proposed Order Granting Plaintiff' Motion for Preliminary Approval of Class and Collective Action Settlement, striking preliminary approval of the requested attorney fees and reserving its ruling with the final approval of the settlement.

Dated this 6th day of September 2023.

11

David G. Estudillo
United States District Judge