1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11    MICHAEL RANDALL,                          CASE NO. 3:20-cv-05438-DGE

12                     Plaintiff,               ORDER GRANTING MOTION TO
                                                ALLOW SETTLEMENT
           v.                                   ADMINISTRATOR TO PERFORM
13                                              ADDITIONAL SERVICES IN THE
       INTEGRATED COMMUNICATION                 DISTRIBUTION OF RESIDUAL
       SERVICE INC,                             SETTLEMENT FUNDS (DKT. NO.
14                                              137)
                       Defendant.
15

16

## I    INTRODUCTION

Before the Court is Plaintiffs' unopposed Motion to Allow Settlement Administrator to

Perform Additional Services in the Distribution of Residual Settlement Funds.  (Dkt. No. 137.)

Plaintiffs request the Court allow the Court-appointed Settlement Administrator, Phoenix

Settlement Administrators ("Phoenix") to perform additional administration services in the

distribution of the remaining Net Settlement Fund to class and collective members.  (*Id.* at 2.)

Phoenix seeks to perform additional skip-tracing as a final effort to reach class and

collective members who are entitled to receive funds under the settlement approved by the Court.

1  (*Id.*)  Upon completing the skip-tracing, Phoenix requests the Court allow them to distribute the

2  residual settlement funds as a *cy pres* payment to the National Employment Law Project

3  ("NELP").  (*Id.* at 2, 4.)

## II    BACKGROUND

5      On March 29, 2024, the Court granted Plaintiffs' motion for final approval of class and

6  collective action settlement.  (Dkt. No. 136.)  Therein, the Court confirmed the appointment of

7  Phoenix as the Settlement Administrator and approved the NELP as the *cy pres* recipient.  (*Id.* at

8  5–6.)

9      In its prior order, the Court approved the following implementation schedule:

| | |
|---|---|
| Effective Date | Either (i) if any timely objection is filed to the Settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if any timely objection and appeal by an objector is filed, then after any appeal is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the Settlement, or if any objections that were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement, whichever is latest. |
| Deadline for Defendants to pay the Gross Settlement Amount into the Qualified Settlement Account | Within 21 calendar days after the Effective Date |
| Deadline for Settlement Administrator to make payments under the Settlement to Participating Individuals, Settlement Class Representatives, Class Counsel, and itself | Within 45 calendar days after the Effective Date |
| Deadline for Settlement Administrator to send reminder letter to Participating Individuals who have yet to cash their checks | With 90 days remaining of the check-cashing deadline |
| Check-cashing deadline | 180 calendar days after issuance |

| Deadline for Settlement Administrator to redistribute remaining funds from uncashed checks to *cy pres* recipient | As soon as practicable after check-cashing deadline |
|---|---|
| Deadline for Settlement Administrator to provide Post-Judgment Report | As soon as practicable after check-cashing deadline |

(Dkt. No. 136 at 5.)

Phoenix adhered to the implementation schedule set out by the Court.  On April 23, 2024, and in accordance with the Court's order, Defendants deposited $2,259,017.00 into the Qualified Settlement Fund ("QSF").  (Dkt. No. 137 at 3.)  Then, on May 16, 2024, Phoenix issued and mailed checks from the QSF to the 752 Participating Class Members.  (*Id.*)  On August 14, 2024, Phoenix mailed a reminder postcard to Participating Class Members whose checks remained uncashed.  (*Id.*)  On November 12, 2024, the check-cashing period for Participating Class Members expired.  (*Id.*)  Currently, 191 checks, totaling $208,266.39, remain uncashed.  (*Id.*)  During the check-cashing period 50 checks were returned as undeliverable.  (*Id.*)  Phoenix skip-traced all 50 checks and was able to obtain updated addresses for 38 checks.  (*Id.*)  12 checks were determined to be undeliverable because Phoenix was unable to obtain updated addresses.  (*Id.*)

Plaintiffs propose Phoenix conduct an additional skip-trace of all remaining 191 uncashed checks to obtain updated addresses, reissue replacement checks to all 191 Participating Class members, and issue a reminder postcard.  (*Id.*)  Phoenix anticipates this process will amount to $2,596.69 in costs and asks for these costs to be deducted from the uncashed funds.  (*Id.* at 4.)  Finally, Plaintiffs request the Court allow any uncashed funds after the reissuance of checks be paid to the NELP.  (*Id.*)

### III    DISCUSSION

"The *cy pres* doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307–08 (9th Cir. 1990)). "[F]ederal courts frequently use the *cy pres* doctrine 'in the settlement of class actions where the proof of individual claims would be burdensome or distribution of damages costly.'" *Id.* at 1038 (quoting *Six Mexican Workers*, 904 F.2d at 1305). "In the context of class action settlements, a court may employ the *cy pres* doctrine to 'put the unclaimed fund to its next best compensation use, e.g., for the aggregate, indirect, prospective benefit of the class.'" *Id.* (quoting *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir.2007)). To ensure the "next best" beneficiary is identified, the Ninth Circuit held "*cy pres* distribution must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Id.* at 1039 (citing *Six Mexican Workers*, 904 F.2d at 1307).

Phoenix fulfilled its duties as prescribed by the settlement. (*See* Dkt. Nos. 120 at 12–13, 18; 136 at 5; 137 at 3.) Now, Phoenix seeks to perform an additional skip-trace to afford class members another opportunity to claim their checks. Thus, here, the Court finds it appropriate that after affording class members every opportunity to claim their allotted settlement funds, Phoenix pay the unclaimed settlement funds to the NELP.

This Court approved the NELP as the *cy pres* recipient in its order granting final approval of the class and collective action settlement. (Dkt. No. 136 at 5.) NELP is a national nonprofit legal and policy advocacy organization that seeks "[t]o build a just and inclusive economy where all workers have expansive rights and thrive in good jobs." *About Us*, National Employment

Law Project (last visited May 7, 2025), https://www.nelp.org/about-us/.  The settlement bore out of alleged violations of the Fair Labor Standards Act ("FLSA") and the wage and hour laws of Washington, Oregon, and Colorado.  (Dkt. No. 120 at 10.)  Plaintiffs claim Defendants failed to compensate them appropriately, failed to provide them with proper meal and rest breaks, and required them to incur work-related expenses.  (*See id.*)  The mission of NELP aligns with the purpose of the FLSA and its corresponding state laws, and is accordance with the interests of the silent class members.  And so, here, NELP is an appropriate beneficiary of the unclaimed funds.

## IV    CONCLUSION

Accordingly, and having considered Plaintiffs' unopposed motion and the remainder of the record, the Court finds and ORDERS that Plaintiffs' Unopposed Motion to Allow Settlement Administrator to Perform Additional Services in the Distribution of Residual Settlement Funds is **GRANTED** and **ORDERS** as follows:

1. As soon as practicable following the date of this Order, the Settlement Administrator, Phoenix Settlement Administrators ("Phoenix"), shall conduct an additional skip-trace of all uncashed checks to obtain a more-recent address for Participating Class Members where possible.

2. Following the skip-trace and as soon as practicable, Phoenix will issue replacement checks to all Participating Class Members whose checks remain uncashed as of the date of this Order.

3. After issuance of replacement checks and during the check cashing period, Phoenix will issue a reminder postcard to any individuals who fail to negotiate the replacement payments.

4. The Court approves the requested additional expenses of $2,596.69 associated with these additional steps to be paid to Phoenix, and such additional expenses shall be deducted from the uncashed funds prior to reissuance of payments.

Dated this 7th day of May, 2025.

David G. Estudillo
United States District Judge